IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| HARVEY CARLTON BULLARD | * | |
| KATHALENE ESTELLA BULLARD, | * | Case No.: 1-03-bk-00406MDF |
|     Debtors | * | |
| | * | |
| PREMIER AUTO FINANCE c/o | * | |
| SYSTEMS & SERVICES | * | |
| TECHNOLOGIES, INC., | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No. 1-06-ap-00112 |
| | * | |
| HARVEY CARLTON BULLARD | * | |
| KATHALENE ESTELLA BULLARD, | * | |
|     Defendants | * | |
| | * | |

## OPINION

The matter before me is a motion filed by Harvey and Kathalene Bullard ("Debtors") seeking dismissal of the adversary complaint filed by Premier Auto Finance ("Plaintiff"). Debtors seek dismissal of Plaintiff's Complaint to Determine Dischargeability under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the motion will be granted in part and denied in part.

### Procedural and Factual History

Plaintiff's complaint alleges the following facts. On December 16, 2001, Debtors purchased a 2000 Dodge Durango financed by Plaintiff. On January 23, 2003, Debtors filed a chapter 13 petition. Under the terms of their chapter 13 plan ("Plan"), Debtors proposed to cramdown Plaintiff's secured claim to $16,212.00. The Plan was confirmed without objection on March 31, 2003. On August 26, 2003, Debtors filed a motion to modify the Plan, but the

proposed modification did not affect the amount to be paid on Plaintiff's secured claim. No objections were filed, and the modification was approved on October 1, 2003.

On or about October 15, 2003, the Durango was involved in an accident and was declared a total loss by Debtors' insurance carrier. The proceeds of the casualty insurance on the vehicle, in the amount of $15,562.50, were paid to the chapter 13 trustee ("Trustee"). Shortly thereafter, the Trustee disbursed $15,542.25 to Plaintiff in partial satisfaction of its claim. After the funds were paid to Plaintiff, Debtors filed a motion requesting court approval to purchase a new vehicle for their use, which also would provide substitute collateral for Plaintiff's loan. An order was entered approving the substitution on December 15, 2003. Plaintiff forwarded the funds received from the Trustee to the dealer, which, in turn, were used by Debtors to purchase a 1999 Dodge Durango. Title was issued to Debtors, and Plaintiff was listed as the first lienholder. On September 2, 2004, Plaintiff filed an amended proof of claim describing the substituted collateral.

On March 29, 2005, Debtors filed a second motion to modify their Plan. They averred that they had "missed making some plan payments because of changed employment" and requested court approval "to amend the plan to provide for a cure of the delinquency." (Motion to Amend Plan, ¶ 2). The plan summary describing the second amendment to the Plan included the statement – "Amount and Duration: $31,674.50 through April, 2005; then $696.00 per month for approximately 13 months." Although Debtors had obtained approval to substitute collateral with the agreement of Plaintiff and the Trustee, the second amendment proposed no changes to the treatment of Plaintiff's claim and continued to list the 2000 Dodge Durango as collateral for the allowed secured claim. The second motion to amend was approved on May 26, 2005, again without objection. Following approval of the second amendment to the Plan,

Debtors made payments of $696.00 per month for 13 months, as proposed, and received a discharge under 11 U.S.C. § 1328(a) on May 24, 2006. The case was closed by an order of the Court entered on May 26, 2006.

On June 14, 2006, Plaintiff filed a motion to reopen the case and set aside the discharge order "for cause." Debtors filed an answer to the motion, and a hearing was held on June 26, 2006. The Court reopened the case and permitted Plaintiff to file an adversary complaint. In response to Plaintiff's Complaint, Debtors moved to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable to bankruptcy proceedings by Fed. R. Bank. P. 7012, alleging that Plaintiff had failed to state a claim upon which relief could be granted. Plaintiff answered the motion on August 9, 2006. The matter is ready for decision.

## Discussion

The Court must dismiss a complaint for failure to state a claim upon which relief can be granted if the moving party demonstrates that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Griesenbeck v. Am. Tobacco Co.*, 897 F. Supp. 815, 819 (D. N.J. 1995). In deciding a motion to dismiss, the Court must treat the facts alleged in the complaint as true, construe the complaint in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, and ask whether, under any reasonable reading of the complaint, the non-moving party may be entitled to relief. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d. Cir.), *cert. denied*, 111 S. Ct. 2839 (1991). The Court need not determine if the non-moving party ultimately will prevail, but only whether the plaintiff would be entitled to relief under any set of facts that could be proven consistent with the allegations set forth in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). On a motion to dismiss pursuant to Rule 12(b)(6), a court ordinarily cannot

3

Case 1:06-ap-00112-MDF   Doc 6   Filed 01/17/07   Entered 01/18/07 14:33:19   Desc
Main Document    Page 3 of 9

consider matters outside of the pleadings unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. *See* Fed. R. Civ. P. 12(b)(6); *see also Buck v. F.D.I.C.,* 75 F.3d 1285, 1288 n. 3 (8th Cir.1996). However, the court may consider certain matters outside of the pleadings on a motion to dismiss without converting the motion into a motion for summary judgment if "the plaintiffs' claims are based solely on the interpretation of the documents submitted and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Retirement Plan,* 187 F.3d 970, 972 n. 3 (8th Cir.1999). In deciding motions to dismiss filed in adversary cases, the court also may take judicial notice of the docket and pleadings in the main case. *Catholic Order of Foresters v. U.S. Bancorp Piper Jaffray, Inc*., 337 F.Supp.2d 1148, 1159 -1160 (N.D. Iowa 2004).

As raised by Debtors in the motion to dismiss, the exact statutory basis for the instant complaint is somewhat difficult to decipher. While the numbered paragraphs of the complaint refer only to § 523(a)(2)(A), an unnumbered narrative section of legal argument within the complaint also refers to § 1328(e) and Fed. R. Civ. P. 60(b)(1) without reference to § 523(a)(2)(A).[1] Under 11 U.S.C. § 1328(e), a bankruptcy discharge is subject to revocation only if the discharge was obtained by fraud of which the requesting party had no knowledge until after the discharge was entered. In relevant part, Fed. R. Civ. P. 60(b)(1), made applicable to bankruptcy proceedings by Fed. R . Bankr. P. 9024, provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . (3) fraud, . . .

---

[1]Fed.R.Civ.P. 10(b), made applicable to adversary complaints in bankruptcy by Fed.R.Bankr.P. 7010, requires that "all averments of [a] claim or defense shall be made in numbered paragraphs."

4

misrepresentation, or other misconduct of an adverse party; or (6) any other reason justifying relief from the operation of the judgment."

Despite references to § 523(a)(2)(A) and Fed. R. Civ. P. 60(b), Plaintiff asserts that "[t]he primary issue in this complaint is whether or not the Bankruptcy Court has legal authority to revoke the discharge order in this case." (Complaint, p. 5.) Plaintiff asserts that Debtors "clearly misrepresented to the Court that they had made all of their payments toward Plaintiff's claim as required by 11 U.S.C. § 1328(e). In fact, [Debtors] had only paid $16,112.00; the remaining $15,562.50 was paid by the insurance company . . . ." (Complaint, p. 5.) Based on these assertions, Plaintiff argues that Debtors "have not made all the payments under the plan so they are unable to claim that they 'earned' their discharge. It would be inequitable for Defendants to retain a discharge that they had no right to receive in the first place." (Complaint, p. 6).

Neither 523(a)(2)(A) nor § 1328(e) provide support for the revocation of Debtors' discharge. Section 523(a)(2)(A) simply is not applicable to a discharge entered under 11 U.S.C. § 1328(a). Section 523(a)(2)(A) specifically refers only to a discharge in chapter 13 under § 1328(b), which provides for a debtor to obtain a "hardship discharge" under special circumstances. Debtors in this case did not seek, nor did they receive, a discharge under § 1328(b).

In order to support a case for revocation of a discharge under § 1328(e), a complaint must indicate that "such discharge was obtained by the debtor through fraud." "[F]raud is the linchpin which empowers a bankruptcy court to grant a revocation" of a chapter 13 discharge. *In re Stern* 70 B.R. 472, 474 (Bankr. E.D. Pa. 1987) *citing In re Levine,* 8 B.R. 281, 284 (N.D. Ill. 1980). The use of the word "obtained" in this section means that the fraud must have been perpetrated

5

directly on the bankruptcy court or on the "entire creditor body." *In re Bailey*, 1998 WL 34068160 (Bankr. S.D. Ill.) "The fraud must be directly attributable to the debtor." *Keith M. Lundin, Chapter 13 Bankruptcy*, 3d Ed. 356-3 (2000 & Supp. 2004). When fraud is alleged in a complaint, a Rule 12(b)(6) motion must be considered in light of the requirements of Fed. R. Civ. P. 9(b) that allegations of fraud must be stated with specificity. In the context of Rule 9(b), specificity means "the who, what, when, where and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) *cert. denied*, 498 U.S. 941, 111 S. Ct. 347, 112 L.Ed. 2d 312 (1990).

The allegations of the complaint that refer to fraud are as follows:

> 17. On or about, March 28, 2005, [Debtors] filed a Second Amended Plan stating that they had paid $31,674.50 in payments to the Trustee and sought to reduce the number of monthly payments. The claim by [Debtors] of the amount paid to the Trustee is false. As of the date of the . . Second Amended Plan, [Debtors] had paid the sum of $16,112.00 to the Trustee. The remaining $15,562.50 was not paid by [Debtors], but by the insurance company as proceeds for the total loss of the vehicle.
>
> \* \* \*
>
> 19. On or about May 12, 2006, [Debtors] received a discharge by this court due in part to the Trustee's records indicating that all claims were paid as ordered in the Plan.
>
> 20. Due to the Trustee's clerical error in posting the Insurance Proceeds as a plan payment to Plaintiff, those records indicate that Plaintiff's claim has been paid in full. However, [Debtors] should have made approximately twenty-one (21) additional payments to the Trustee in order to fully fund the Plan. By seeking an early plan termination and discharge, [Debtors] represented that all claims (including Plaintiff's) had been paid in full and (sic) knew or should have known that would deceive the Court in granting them a discharge.

These allegations as to fraud are conclusory and fail to allege sufficient facts to enable Debtors to respond to the Complaint. Paragraph 17 is factually inaccurate. Debtors did not state in the second amendment to the plan that they had paid $31,674.50 to the Trustee. The figure of $31,674.50 appears in a cryptic passage within the section labeled "Plan Summary" and suggests

6

that $31,674.50 had been paid into the plan through April 2005. Paragraph 20 of the Complaint, rather than supporting an allegation of fraud, specifically states that Plaintiff's claim was not paid in full due to Trustee error. Further, if the representations in the Plan as amended form the basis for the allegations of fraud, it is undisputed that both the Trustee and Plaintiff were aware of the collateral substitution order and the disposition of the insurance proceeds when the second motion to amend the Plan was filed. There is no allegation that Debtors took any action to trigger the Trustee's filing of his final report on May 11, 2005, which resulted in the entry of the discharge on May 14, 2005. In short, nothing in the Complaint indicates any fraudulent act attributable to Debtors in obtaining their discharge in this case. Accordingly, I conclude that the motion to dismiss must be granted as to Plaintiff's cause of action for revocation of discharge under 11 U.S.C. §1328(e).

Plaintiff also alleged in the "argument" section of its Complaint that Debtors' discharge may be revoked under Fed. R. Civ. P. 60(b) for fraud. Although Rule 60(b) authorizes a court to relieve a party from an order for fraud, the rule includes additional bases, such as mistake, inadvertence, excusable neglect, newly discovered evidence, or misrepresentation. Generally, relief granted under Rule 60(b) does not affect the finality of a judgment. "Thus, when a court grants relief under Rule 60(b), the discharge is not 'revoked' but is simply altered to provide limited relief as appropriate under the circumstances." *Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1199 (10th Cir. 2003).

It is well established that a Court may vacate its own orders that have been entered due to clerical error or mistake. Fed.R.Civ.P. 60 (a)(b). *In re Midkiff*, 342 F.3d. at 1199. However, the use of Rule 60(b) has been limited by the Court of Appeals for the Third Circuit because of countervailing statutory concerns about the finality of orders. In *Branchburg Plaza Associates,*

7

*L.P. v. Fesq (In re Fesq)*, 153 F.3d 113 (3d 1998), the Third Circuit held that a chapter 13 confirmation order may be revoked only if the order was procured by fraud as specified in 11 U.S.C. § 1330(a) and that Rule 60(b) may not be invoked to revoke the order on other grounds. *Id.* at 116.[2] However, the Third Circuit did note in *dicta* that Rule 60(b) "may be used to correct some other problems that arise with such orders. So, for example, courts could still redress clerical mistakes via Rule 60(b) without fear of violating Section 1330(a)." *Id.* at n. 6.

The factual scenario in the within case is similar to the situation addressed by the Ninth Circuit Court of Appeals in *Cisneros v. U.S. (In re Cisneros),* 994 F.2d 1462 (9th Cir. 1993). In *Cisneros,* the trustee mistakenly filed a final report stating that all allowed claims had been paid, and the court entered a discharge order. When the Internal Revenue Service discovered that its claim had not been paid as proposed in the confirmed plan, the Service moved to reopen the case and vacate the discharge order. The Ninth Circuit held that Rule 60(b) could be invoked to correct a mistake of fact by the court. *Id.* at 1466. "A Chapter 13 debtor's right to have his discharge revoked only for fraud . . . is in no way infringed when a court vacates an order of discharge entered by mistake." *Id.* Courts following *Cisneros* have cautioned against reading into the decision a broad power to set aside discharge orders and have understood the holding as simply reaffirming a court's inherent power to correct its own errors. *In re Robinson*, 293 B.R. 59, 64 (Bankr. D. Or. 2002); *In re Daniels*, 163 B.R. 893 (Bankr. S.D. Ga. 1994); *In re Ford*, 159 B.R. 590, 593 (Bankr. D. Or. 1993).

---

[2]The issue in *Fesq* involved the revocation of an chapter 13 confirmation order under § 1330 rather than revocation of a discharge order. However, the statutory analysis under each section is similar because both a discharge order and a confirmation order may be revoked only if obtained through fraud.

Plaintiff has alleged that Debtors proposed to pay Plaintiff $16,212.00 in satisfaction of their secured claim through their confirmed Plan, as modified. Plaintiff admits that it received $16,923.12 from the Trustee, but alleges that $15,542.25 was not used to satisfy the claim. Rather, the proceeds were forwarded to a car dealer so that Debtors could purchase a replacement vehicle that both parties understood would serve as substitute collateral for the claim. Therefore, Plaintiff argues, the Trustee, who agreed to the substitution of collateral, erroneously gave Debtors credit for payment of the claim and prematurely submitted his final report. As to Plaintiff's allegations seeking relief under Rule 60(b), construing the Complaint in the light most favorable to Plaintiff, I find that the allegations are sufficient to survive Debtors' motion to dismiss.

In conclusion, Debtors' motion to dismiss Plaintiff's Complaint as to claims for revocation of discharge for fraud asserted under Section 523(a)(2)(A) and 1328(e) is granted. As to Plaintiff's allegations that the discharge order should be vacated because it was entered by mistake, Debtors' motion to dismiss is denied. An appropriate order follows.

By the Court,

*Mary D. France*
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date: January 17, 2007